# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

SYLVIA J. SCHULER, )
 )
      Plaintiff, )
 ) Civil Action
vs. ) No. 07-3360-CV-S-JCE-SSA
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
      Defendant. )

## **O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits ["DIB"] under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and supplemental security income ["SSI"] under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff, who was 40 years old at the hearing before the ALJ, has a high school diploma with two years of college credits. Her past relevant work includes work as a waitress, bartender, scuba diver, medical assistant, and home health care aide. She alleges disability because of back and shoulder pain, elbow, hip, and knee pain, and headaches.

At the hearing before the ALJ, plaintiff testified that she has an associate's degree as a medical assistant. She stated that she had worked at various jobs and that she eventually quit working at her last job because of pain. She was hospitalized in the past year for about four hours because of a headache that made her nauseous. She has been treated by Dr. Camire for two years for chronic pain in her neck, shoulders, spine, lower back, hips, knees, ankles, and elbows. She has had chronic headaches since 1996. She also feels that she cannot work because of depression, for which she was once prescribed Paxil. She's not being treated for depression, but she does cry and gets agitated and argumentative at times. Plaintiff is supposed to be on pain medication, but does not take it because it makes her nauseous. She does take over-the-counter medication, although it doesn't work. Plaintiff testified that she could probably lift as much as 85 pounds, but it hurts her shoulders and neck to do so, and she cannot continue to hold that amount. She can sit comfortably for 10 minutes, and stand for 15 minutes before she has to readjust and move. On a typical day, she spends her time moving around a lot, taking hot showers, lying down, and trying to do housework. She has to have help, and when she tries to do anything, she is then in pain as a result. She walks to the mail box, which is about 1/5 of a

3

mile, and goes to the grocery store, but must lean on a cart while she's shopping because of the pain. Plaintiff testified that her pain is radicular, in that it comes from her low back down to her legs, and from her neck, down to her arms. She gets sudden pain in her neck, which will "explode" in her shoulder and elbows. [Tr. 366]. The pain is hot and stabbing. It also occurs in her lower back around her tailbone, in her knees, and in her joints generally. It is not arthritis. Both of her legs also go numb, especially if she sits or stands for too long. She also has numbness in her hands and arms, but not at the same time, and has two fingers that are always numb. Her right arm goes numb while driving, and this also interferes with her ability to hold, grip, and grasp things. It was plaintiff's testimony that she also has problems driving because her legs become numb or she has sharp pains in her lower back and neck. She has had nerve conduction tests and MRIs. She has a bulging disc in her neck and old compression fractures. In an average day she might take four showers, for about 30 minutes each. She has to lie down if she tries to do housework, and she usually will lie down for a couple of hours a day for a total of four hours. She uses a pillow around her waist to keep her spine in place, and also uses a neck pillow when she lies down. She has difficulty sleeping at night because her legs tingle, and she has sharp pains. Regarding her headaches, she testified that ever since she had a car accident in 1996, she has had a constant headache; prior to that, she had suffered from migraines. She also has memory problems. In terms of her pain, plaintiff testified that she had been to physical therapy, been to a pain clinic, and seen a neurosurgeon. She has also had trigger point and epidural injections for pain, which have not helped.

The ALJ found that plaintiff has not engaged in substantial work activity since the alleged onset date, March 30, 2003. She further found that the medical evidence established that

4

plaintiff suffers from "degenerative disc disease with spondylosis affecting the lumboscracal spine and cervical spine, post-traumatic or tension headaches, controlled diabetes mellitus, possible mild mitral vale prolapse, and recent onset cyclothymic disorder. . . ." [Tr. 22]. It was her opinion that plaintiff's impairments did not constitute a disability under the Act, and that plaintiff was not fully credible. The ALJ found that plaintiff was able to perform a full range of at least light work, and could therefore perform her past relevant work as a waitress or bartender.

Plaintiff contends that the ALJ's decision should be reversed because she erred in her credibility analysis; erred in her finding regarding plaintiff's Residual Functional Capacity ["RFC"]; and that she gave disproportionate weight to the opinion of the post-hearing consultative examiner.

A review of the record indicates that the ALJ found that plaintiff had the RFC to "perform the physical exertional and nonexertional requirements of work except for lifting or carrying more than 20 pounds frequently or more than 25 pounds occasionally. There are no credible, medically-established mental or other nonexertional limitations." [Tr. 23]. It was her opinion that plaintiff's "past relevant work as a waitress and bartender did not require the performance of work-related activities precluded by [these limitations]. The impairments established in this case do not prevent the claimant from performing this past relevant work, according to vocational expert opinion." [Tr. 23].

The medical records in this case indicate that plaintiff has been treated for knee, low back, hip, neck and shoulder pain, as well as headaches, by Dr. Camire, since July of 2003. Dr. Camire diagnosed her with low back pain and degenerative disc disease. The doctor prescribed numerous pain medications, and a duragesic patch. The medical records document that she had

5

Case 6:07-cv-03360-JCE   Document 20   Filed 03/09/09   Page 5 of 13

side effects from some of the medicine, including nausea and vomiting. After finding that only Morphine worked for her pain, but that the medication made her severely nauseous and caused vomiting, he referred her to a pain clinic. Various x-rays and MRIs revealed degenerative disc disease, spondylosis, bulging and/or protruding disc, scoliosis, sclerosis, narrowing, and lateral disc herniation. On April 30, 2004, plaintiff was involved in a motor vehicle accident; she was diagnosed with lumbar sprain and given medication for pain. An MRI after the accident revealed acromioclavicular joint hypertrophy and tendonitis of the distal supraspinatus tendon. According to Dr. Green, a neurologist, to whom plaintiff was referred by Dr. Camire, she reported constant neck and back pain, which worsened when she walks, bends, lifts and twists. The doctor recommended an MRI, which showed intervertebral disc disorder with myelopathy, which was likely causing the neck and upper extremity pain and the chronic low back pain. It was considered to be likely related to advanced degenerative disc disease. Plaintiff underwent physical therapy for twelve sessions, and made progress with improved range of motion to the lumbar regions, although she still had significant limitations. She was discharged from physical therapy in December of 2003 because she had missed some sessions. Plaintiff went to a pain clinic on October 21, 2004, where she complained of a long history of low back and neck pain, and headaches. The physician noted that she had multiple trigger points, diagnosed myofascial pain, and recommended trigger point injections. She had five trigger point injections, and only got relief on one occasion. In March of 2005, she went to the pain clinic where she continued to complain of low back and leg pain. She stated that she had gotten some relief from the injections, but that she was still experiencing shooting pain radiating down her legs, and that she had extreme tenderness in her neck. The doctor suggested a sixth trigger point injection and a

6

lumbar epidural steroid injection, to which plaintiff agreed. In April, she admitted that she had gotten one week of relief from the pain, and then it would return. The doctor diagnosed lumbosacral radiculitis and myofascial pain, and opined that the risk of continuing with the injections for only one week of relief outweighed the benefits. The physician referred her back to Dr. Green, the neurologist, for re-evaluation. Plaintiff thereafter had cervical and lumbar myelograms, which revealed left lateral disc bulging/disc herniation, and "Bony ridge arising from the posterior aspect of the S1 vertebral body just below the level of the disk causing slight mass effect on the left nerve root. Also, probable small posterolateral disk herniation at the same level." [Tr. 301]. The cervical myelogram revealed spondylosis causing disc bulges at several sites and mild stenosis. The medical records indicate that plaintiff continued to receive medical treatment for chronic neck and back pain, returned to the pain clinic, sought treatment from Dr. Green, and continued to be prescribed strong pain medication. No surgical treatment was recommended.

      The ALJ ultimately found that the medical evidence did not support limitations greater than those indicated in the RFC. In reaching her decision, the ALJ found that plaintiff was not totally credible. She noted that no physician had placed specific long-term limitations on her ability to walk, sit, stand, and perform other basic exertional activities. She also noted that plaintiff participated in physical therapy in 2003, but was noncompliant with the program. It was also her opinion that plaintiff did not exhibit most of the signs typically associated with chronic, severe musculoskeletal pain. [Tr. 21]. The ALJ noted that plaintiff had a steady work history up to and including her alleged onset date, but that other factors weighed against her credibility. She concluded that although she had had intensive treatment, it was not constant, and she had not

had surgery or inpatient hospitalizations for these kinds of complaints in recent years. In terms of medication side effects, it was the ALJ's conclusion that the adverse side effects were presumably eliminated or at least greatly reduced by medication changes.

Plaintiff contends that the ALJ erred in her credibility determination because the medical evidence supports her allegations of pain due to severe pathology in the entire spinal column; that she minimized plaintiff's steady work history; and that she failed to consider the variety of treatment which plaintiff had undergone in an attempt to relieve the pain. Plaintiff contends that the ALJ erred in concluding that to the extent that her physical activities were restricted this was much more so by her choice than any apparent medical reason.

In evaluating a claimant's allegations, the ALJ must consider, in addition to the medical evidence, the Polaski factors. These include prior work history, daily activities, duration and intensity of pain, effectiveness and side effects of medication, aggravating factors, and functional restrictions. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002). In discrediting subjective claims, the ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Instead, the ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible. Id. at 971-72. "Where adequately explained and supported, credibility findings are for the ALJ to make." Id. at 972.

After careful review of the record as a whole, the Court finds that the ALJ erred in discrediting plaintiff's testimony, and did not adequately discuss the factors set forth in Polaski. She did not point to inconsistencies in the record that would cause plaintiff's testimony regarding her level of pain to not be credible, nor do such inconsistencies appear to exist; she

minimized the adverse side effects of medication, which were well-documented in the record; she downplayed plaintiff's steady work history; and she did not delineate examples of medical records from treating physicians that were inconsistent with plaintiff's level of complaints.

In this case, there is well-documented medical evidence in the record to support plaintiff's allegations of a disabling physical condition because of numerous serious spinal problems. These include disc bulging and herniation, nerve root compression, stenosis, spondylosis, cervical radiculopathy, positive straight let raising, and other positive findings. These conditions have been substantiated by a plethora of diagnostic tests, many strong pain medications, a great number of which have caused adverse side effects, trigger point and epidural injections, and physical therapy. Plaintiff has been referred to a neurologist as well as a pain clinic and physical therapist in an effort to diagnose and control the pain. Based on a review of the record as a whole, the Court finds that the ALJ erred in her credibility analysis. The Court finds that the ALJ did not rely on substantial, relevant and supporting evidence in explaining her reasons for discrediting plaintiff's complaints. Lowe, 226 F.3d at 971-72.

Plaintiff argues that ALJ erred in her RFC finding because she did not assess plaintiff's ability regarding standing, walking or sitting, did not perform a function-by-function assessment, and wholly ignored substantial evidence in the record regarding plaintiff's nonexertional impairment of pain. She contends that the ALJ ordered a post-hearing consultative examination by a state agency physician, Dr. Choudhary because she was dissatisfied with the vocational expert's testimony at the hearing that a person with the limitations posed in the hypothetical posed by the ALJ could not perform her past relevant work or any work. Dr. Choudhary opined that plaintiff's back and neck pain were "probably caused by either degenerative disc disease or

9

myofascial pain, and that the headaches were either post-traumatic or tension kinds." He concluded that plaintiff would have no problems with standing or sitting, or with handling objects with her upper extremities; that she could lift and carry 20 pounds frequently and 25 pounds occasionally, and do occasional climbing, balancing, stooping, kneeling etc. [Tr. 19]. The ALJ adopted this opinion in part in reaching her conclusion that plaintiff had the RFC to perform the physical exertional and nonexertional requirements of work except for lifting or carrying more than 20 pounds frequently or more than 25 pounds occasionally, and that there were no credible, medically-established mental or other nonexertional limitations.

The Court concludes that there is not substantial evidence in the record as a whole, including all the medical evidence and testimony, to support the ALJ's determination regarding plaintiff's RFC. It is the duty of the ALJ to determine a claimant's RFC, based on all the relevant evidence. See e.g., McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). The ALJ's RFC finding did not include the nonexertional impairment of pain, nor did it assess her walking, standing and sitting limitations. Although the ALJ rendered her decision at Step Four of the evaluation process, she did utilize the services of a vocational expert at the hearing. In posing a hypothetical to the vocational expert, the ALJ first asked about a person who had a light RFC, with further limitations in the upper extremities, including limits in reaching overhead, postural limitations, and environmental limitations. The vocational expert testified that such a person would not be able to return to plaintiff's past relevant work of waitress and bartender. The vocational expert asked for more explanation regarding the limitations on the upper extremity, to which the ALJ replied, "Let's limit it to no repetitive or forceful postures or no pushing or pulling." [Tr. 377]. The vocational

expert responded that, with those limitations, he couldn't come up with any jobs because a person has to use their arms and hands. When the ALJ asked the vocational expert about reducing the RFC down to sedentary, the expert still testified that there would be no significant jobs available.

In rendering her decision, the ALJ stated that she had relied on all the "exhibits, the testimony at the hearing, the vocational expert's opinions, and all arguments presented" in concluding that plaintiff was not under a disability. [Tr. 17]. The ALJ later stated that "[t]he vocational expert testified that the claimant would be unemployable if she had a basic light or sedentary exertional capacity only, but with additional severe restrictions against any kind of repetitive use of the upper extremities, but the undersigned does not find these assumptions to be valid or justified by the preponderance of the medical evidence and opinions in this record." [Tr. 20]. Then, the ALJ stated that plaintiff's past relevant work as a waitress and bartender did not require the performance of work-related activities precluded by her findings, and that the impairments established in this case did not prevent plaintiff from performing her past relevant work, "according to the vocational expert opinion." [Tr. 23].

Plaintiff submits that this was not the opinion rendered by the vocational expert. It is asserted that the ALJ erred in stating that "the impairments established in this case do not prevent the claimant from performing this past relevant work, according to vocational expert opinion." [Tr. 23]. Defendant submits that relying on vocational expert testimony in response to a hypothetical situation more restrictive than that found to be supported by the evidence would have been improper, and that because the ALJ stopped at Step Four, vocational expert testimony was not required. Further, defendant contends that the ALJ solicited the testimony of the

11

vocational expert to obtain evidence regarding the requirements of plaintiff's past relevant work.

There is no question that the record is confusing and inconsistent regarding the ALJ's reliance or lack of reliance on the opinion of the vocational expert, which was that there was no work that plaintiff could perform, given the hypothetical posed by the ALJ at the hearing. The record supports a finding that there was a more than ample factual basis to support the hypothetical presented to the vocational expert regarding plaintiff's limitations. A fair reading of the record supports the conclusion that the ALJ gave undue weight to a post-hearing consultative state examiner in order to support her decision to apparently reject the unequivocal testimony of the vocational expert, and that there is not substantial evidence in the record to support the ALJ's decision that plaintiff could perform her past relevant work. Despite the fact that the ALJ stopped at step four of the evaluation process, and therefore, did not need to rely on the opinion of a vocational expert, in this case the expert testified that, given the limitations suggested by the ALJ in the hypothetical question, the claimant would not be able to perform her past relevant work or any work. On the one hand, the ALJ states in part of her opinion that the testimony of the vocational expert supported her finding that plaintiff could perform her past relevant work, which completely misstates the record. Elsewhere in her findings, she totally discounts the vocational expert's opinion, stating that the testimony was not valid, based on the medical evidence. While vocational expert testimony is not necessary at a step four determination, <u>Gaddis v. Chater,</u> 76 F.3d 893, 895 (8th Cir. 1996), where there is vocational testimony, and that testimony supports a finding of disability, based on an RFC that is supported by the record, the Court believes the ALJ erred in not relying on it

12

Accordingly, the Court finds that, based on the record as a whole, the ALJ's decision to find that plaintiff is not disabled is not supported by substantial evidence.

Accordingly, the decision of the Secretary should be reversed.

Based on the foregoing, the Court finds that there is not substantial evidence in the record to support the ALJ's decision that plaintiff is not disabled. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: 3/9/09